1

2

3

4

5

6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7

GUILD MORTGAGE COMPANY,

Case No. 2:15-CV-258 JCM (VCF)

8

Plaintiff(s),

ORDER

9

v.

10

PRESTWICK COURT TRUST, et al.,

11

Defendant(s).

12

13

Presently before the court is plaintiff Guild Mortgage Company's ("Guild") motion for

14

summary judgment.  (ECF No. 40).  Defendant Prestwick Court Trust ("Prestwick") filed a

15

response (ECF No. 46), to which Guild replied (ECF No. 49).

16

Also before the court is Prestwick's motion for summary judgment (ECF No. 43), in which

17

defendant Canyon Crest Master Association (the "HOA") joined (ECF No. 45).  Guild filed a

18

response (ECF No. 47), to which Prestwick replied (ECF No. 51).

19

**I.     Facts**

20

This case involves a dispute over real property located at 247 Prestwick Court, Mesquite,

21

Nevada (the "property").

22

On November 29, 2011, Anibal Estrada obtained a loan in the amount of $180,285.00 from

23

Guild, which was secured by a deed of trust.  (ECF No. 1 at 3).

24

On December 21, 2012, Alessi and Koenig, LLC ("A&K"), acting on behalf of the HOA,

25

recorded a notice of delinquent assessment lien, stating an amount due of $1,253.27.  (ECF No. 1

26

at 3).  On May 26, 2013, A&K recorded a notice of default and election to sell to satisfy the

27

delinquent assessment lien, stating an amount due of $2,469.81.  (ECF No. 1 at 4).

28

James C. Mahan
U.S. District Judge

1    On October 10, 2013, A&K recorded a notice of trustee's sale, stating an amount due of

2    $4,538.40.  (ECF No. 1 at 4).  A&K also mailed the notice of trustee's sale by certified mail to

3    Guild and other interested parties.  (ECF No. 46-8).

4    On November 6, 2013, Prestwick purchased the property at the foreclosure sale for

5    $20,100.00, and received a trustee's deed upon sale in favor of Prestwick.  (ECF No. 1 at 4).

6    On February 12, 2015, Guild filed the underlying complaint, alleging five causes of action:

7    (1) declaratory relief; (2) declaratory relief; (3) wrongful foreclosure; (4) declaratory relief; (5)

8    declaratory relief; and (6) quiet title.  (ECF No. 1).

9    On April 17, 2015, Prsetwick filed a counter/crossclaim, alleging two causes of action: (1)

10   quiet title; and (2) declaratory relief.  (ECF No. 10).

11   In the instant motions, Guild and Prestwick both move for summary judgment.  The court

12   will address each as it sees fit.

13   **II.    Legal Standard**

14   The Federal Rules of Civil Procedure allow summary judgment when the pleadings,

15   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

16   show that "there is no genuine dispute as to any material fact and the movant is entitled to a

17   judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is

18   "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

19   323–24 (1986).

20   For purposes of summary judgment, disputed factual issues should be construed in favor

21   of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be

22   entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts

23   showing that there is a genuine issue for trial."  *Id.*

24   In determining summary judgment, a court applies a burden-shifting analysis.  The moving

25   party must first satisfy its initial burden.  "When the party moving for summary judgment would

26   bear the burden of proof at trial, it must come forward with evidence which would entitle it to a

27   directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has

28   the initial burden of establishing the absence of a genuine issue of fact on each issue material to

**James C. Mahan**
**U.S. District Judge**

- 2 -

1    its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)

2    (citations omitted).

3       By contrast, when the nonmoving party bears the burden of proving the claim or defense,

4    the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

5    element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed

6    to make a showing sufficient to establish an element essential to that party's case on which that

7    party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving

8    party fails to meet its initial burden, summary judgment must be denied and the court need not

9    consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–

10    60 (1970).

11       If the moving party satisfies its initial burden, the burden then shifts to the opposing party

12    to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

13    *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the

14    opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient

15    that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

16    versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

17    631 (9th Cir. 1987).

18       In other words, the nonmoving party cannot avoid summary judgment by relying solely on

19    conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,

20    1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

21    pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

22    for trial. *See Celotex*, 477 U.S. at 324.

23       At summary judgment, a court's function is not to weigh the evidence and determine the

24    truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby*,

25    *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all

26    justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the

27    nonmoving party is merely colorable or is not significantly probative, summary judgment may be

28    granted. *See id.* at 249–50.

**James C. Mahan**
**U.S. District Judge**

**III.    Discussion**

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010.  "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted).  Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others.  *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

**A.  Conclusive Recitals**

Section 116.3116(1) of the Nevada Revised Statutes gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests.  *See* Nev. Rev. Stat. § 116.3116(2).  In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece.  The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust.  The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale.  *Id.* at 415.  Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see*

1  *also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale"

2  upon compliance with the statutory notice and timing rules).

3         Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to

4  NRS 116.31164 of the following are conclusive proof of the matters recited:

5         (a) Default, the mailing of the notice of delinquent assessment, and the recording
       of the notice of default and election to sell;
6         (b) The elapsing of the 90 days; and
       (c) The giving of notice of sale[.]
7  Nev. Rev. Stat. § 116.31166(1)(a)–(c).[1]  "The 'conclusive' recitals concern default, notice, and

8  publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale

9  as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and

10 give context to NRS 116.31166." *Shadow Wood Homeowners Assoc., Inc. v. N.Y. Cmty. Bancorp,*

11 *Inc.*, 366 P.3d 1105, 1110 (Nev. 2016 ("*Shadow Wood*").  Nevertheless, courts retain the equitable

12 authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily

13 conclusive recitals.  *See id.* at 1112.

14        Here, Prestwick has provided the recorded trustee's deed upon sale, the recorded notice of

15 delinquent assessment, the recorded notice of default and election to sell, and the recorded notice

16 of trustee's sale.  (ECF No. 43).  Pursuant to NRS 116.31166, these recitals in the recorded

17 foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162

18 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure.  *See id.*

19 at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance

20 only with the statutory prerequisites to foreclosure.").  Therefore, pursuant to NRS 116.31166 and

21

22 _____

23        [1]  The statute further provides as follows:

24        2. Such a deed containing those recitals is conclusive against the unit's
       former owner, his or her heirs and assigns, and all other persons. The receipt for the
25     purchase money contained in such a deed is sufficient to discharge the purchaser
       from obligation to see to the proper application of the purchase money.
26
       3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164
27     vests in the purchaser the title of the unit's owner without equity or right of
       redemption.
28
       Nev. Rev. Stat. § 116.31166(2)–(3).

James C. Mahan
U.S. District Judge                                    - 5 -

1  the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS

2  116.31162 through NRS 116.31164.

3  Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*,

4  default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law,

5  entitle Prestwick to success on its quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting

6  contention that NRS 116.31166 defeats, as a matter of law, action to quiet title). Thus, the question

7  remains whether Guild has demonstrated sufficient grounds to justify setting aside the foreclosure

8  sale. *See id.* "When sitting in equity . . . courts must consider the entirety of the circumstances

9  that bear upon the equities. This includes considering the status and actions of all parties involved,

10 including whether an innocent party may be harmed by granting the desired relief." *Id.*

11   **B. Commercial Reasonability**

12  NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in

13  Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-

14  Interest Ownership Act"); *SFR Investments Pool 1, LLC*, 334 P.3d at 410. NRS Chapter 116

15  includes an obligation of good faith. *See* Nev. Rev. Stat. § 116.1113 ("Every contract or duty

16  governed by this chapter imposes an obligation of good faith in its performance or enforcement.").

17  Furthermore, numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a

18  commercial reasonableness standard on foreclosure of association liens.[2]

19  Prestwick relies on the conclusive deed recitals to support its assertion that the foreclosure

20  sale was commercially reasonable and argues that price is not an issue pursuant to *SFR*

---

21  [2]  *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229
22  (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which
    was probably worth somewhat more than half as much when sold at the foreclosure sale, raises
23  serious doubts as to commercial reasonableness."); *SFR Investments Pool 1, LLC*, 334 P.3d at 418
    n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially
24  reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at
    *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the
25  deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend
    Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *4 (D. Nev.
26  Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential
    property free and clear of all encumbrances for the price of delinquent HOA dues would raise
27  grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill
    Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness
28  standard and concluding that "the UCIOA does provide for this additional layer of protection").

**James C. Mahan**
**U.S. District Judge**

- 6 -

1   *Investments*.  (ECF No. 43 at 17).  *SFR Investments*, however, does not hold that price is not

2   considered in a commercial reasonability analysis.  Thus, the deed recitals alone are insufficient

3   to show that the foreclosure sale was commercially reasonable.  *See, e.g.*, *Levers v. Rio King Land*

4   *& Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977) ("Every aspect of the disposition, including the method,

5   manner, time, place, and terms, must be commercially reasonable.").

6       Guild argues that the foreclosure sale should be set aside because the sale price was grossly

7   inadequate.  (ECF No. 40 at 17).  In particular, Guild asserts that Prestwick paid 10.75% of the

8   property's value at the foreclosure sale and grossly inadequate sale price is sufficient to set aside

9   a foreclosure sale under *Shadow Wood*.  (ECF No. 40 at 15–17).

10      The court disagrees.  In *Shadow Wood*, the Nevada Supreme Court held that an HOA's

11  foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on

12  the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or

13  oppression."  366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F.

14  Supp. 3d 853, 857–58 (D. Nev. 2016).

15      In other words, "demonstrating that an association sold a property at its foreclosure sale

16  for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud,

17  unfairness, or oppression."  *Id.* at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982)

18  ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a

19  showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev.

20  1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of

21  price, it may be if the price is grossly inadequate and there is "in addition proof of some element

22  of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price"

23  (internal quotation omitted)))).  Thus, grossly inadequate sale price is insufficient to justify setting

24  aside a foreclosure sale absent a showing fraud, oppression, or unfairness.

25      Guild argues that the purchase price ($20,100.00) at the foreclosure sale (November 6,

26  2013) was grossly inadequate because it was 10.75% of the property's fair market value.  (ECF

27  No. 40).  In support, Guild provides that its appraisal valued the property at $187,000.00 at the

28  time of the foreclosure sale.  (ECF No. 40 at 17).

**James C. Mahan**
**U.S. District Judge**

- 7 -

1    The appraisal report attached to Guild's motion, however, states that the defined value of

2    the property was "as of November 29, 2011" (ECF No. 40-1 at 34), almost two years before the

3    foreclosure sale, not at the time of the foreclosure sale.  Thus, Guild has not set forth any competent

4    evidence that the sale price was grossly inadequate.

5    In light of the foregoing, the court will deny both motions for summary judgment as neither

6    Guild nor Prestwick has sufficiently established this issue in its favor.

7    **C.  Bona Fide Purchaser Status**

8    Guild and Prestwick dispute Prestwick's status as a bona fide purchaser.  The issue of bona

9    fide purchaser ("BFP") status is distinct from that of the conclusiveness of deed recitals.

10   Specifically, the issue of BFP status concerns a buyer's knowledge of competing interests, whereas

11   the other concerns a statutory presumption that can be equitably overcome under *Shadow Wood*

12   *Homeowners Assoc., Inc.  See, e.g.*, *Nationstar Mortg., LLC*, 184 F. Supp. 3d at 859–60.

13   A BFP is a person who purchases real property "for a valuable consideration and without

14   notice of the prior equity, and without notice of facts which upon diligent inquiry would be

15   indicated and from which notice would be imputed to him, if he failed to make such inquiry."

16   *Bailey v. Butner*, 176 P.2d 226, 234 (Nev. 1947) (emphasis omitted); *see also Moore v. De*

17   *Bernardi*, 220 P. 544, 547 (Nev. 1923) ("The decisions are uniform that the bona fide purchaser

18   of a legal title is not affected by any latent equity founded either on a trust, [e]ncumbrance, or

19   otherwise, of which he has no notice, actual or constructive.").  Under Nevada law, "bona fide

20   purchaser" means as follows:

21        Any purchaser who purchases an estate or interest in any real property in good faith
22        and for valuable consideration and who does not have actual knowledge,
          constructive notice of, or reasonable cause to know that there exists a defect in, or
          adverse rights, title or interest to, the real property is a bona fide purchaser.
23

24   Nev. Rev. Stat. § 111.180(1).  In other words, a later-obtained interest can prevail over an earlier-

25   obtained interest where the later purchaser has no knowledge of the previous interest and records

     his/her interest first.  *See Nationstar Mortg., LLC*, 184 F. Supp. 3d at 860.
26

27   The court finds that genuine issues of fact exist regarding Prestwick's status as a bona fide

28   purchaser so as to preclude summary judgment.  A reasonable jury could conclude that Prestwick

     was not a bona fide purchaser because a reasonable purchaser would have perceived some risk that

James C. Mahan
U.S. District Judge

- 8 -

the foreclosure would not extinguish the first deed of trust as the law was not clear at the time of the sale that the foreclosure would extinguish the deed of trust. *See id.*

### C.  FHA-Insured Loan

Guild argues that the foreclosure sale is void because the loan was insured by FHA.  (ECF No. 40 at 44–45).

The single-family mortgage insurance program allows FHA to insure private loans, expanding the availability of mortgages to low-income individuals wishing to purchase homes. *See Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 980–81 (C.D. Cal. 2000) (discussing program); *W Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No. 2:13-cv-01845-GMN-GWF, 2014 WL 4798565, at *1 n.2 (D. Nev. Sept. 25, 2014) (same).  If a borrower under this program defaults, the lender may foreclose on the property, convey title to HUD, and submit an insurance claim.  24 C.F.R. § 203.355.  HUD's property disposition program generates funds to finance the program.  *See* 24 C.F.R. § 291.1.

Allowing an HOA foreclosure to wipe out a first deed of trust on a federally-insured property thus interferes with the purposes of the FHA insurance program.  Specifically, it hinders HUD's ability to recoup funds from insured properties.   As this court previously stated in *SaticoyBayLLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, the court reads the foregoing precedent to indicate that a homeowners' association foreclosure sale under NRS 116.3116 may not extinguish a federally-insured loan.  No. 2:13–CV–1199 JCM (VCF), 2015 WL 1990076, at *4 (D. Nev. Apr. 30, 2015).

However, the instant case is distinguishable from these cases in that, here, FHA is not a named party.  Neither the complaint nor the counterclaim seeks to quiet title against FHA.  Thus, this argument provides no support for Guild as the outcome of the instant case has no bearing on FHA's ability to quiet title.

### D.  Failure to Tender

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior

lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

Here, Guild does not argue that it attempted to pay the deficiency amount prior to the foreclosure sale so as to preserve its interest. Pursuant to the notice of trustee's sale, $4,538.40 was due. (ECF No. 1 at 4). Had Guild paid the noticed amount, the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). Rather than paying the noticed amount and preserving its interest, Guild now seeks to profit from its own failure to follow the rules set forth in the statutes. *Cf.* Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

### E. Constitutional Arguments

#### 1. 5th & 8th Amendments

Guild argues that the HOA assessments are punitive in violation of the 8th Amendment. (ECF No. 40 at 34–35). The 8th Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Guild provides no authority to support that the 8th Amendment is applicable under the present circumstances, nor does it assert an injury arising therefrom. Accordingly, the court will deny Guild's motion for summary judgment on this issue.

Next, Guild contends that NRS 116.3116 *et seq.* violates the 5th Amendment takings clause. (ECF No. 40 at 36–42). The takings clause prohibits the state from taking private property for public use without just compensation. U.S. Const. amend. V; Nev. Const. art. 1, § 8(6). Guild's

1    contention, however, has been specifically rejected.  *See, e.g.*, *Saticoy Bay LLC Series 350*

2    *Durango 104 v. Wells Fargo Home Mortgage, a Div. of Wells Fargo Bank, N.A.*, 133 Nev. Adv.

3    Op. 5, --- P.3d ----, 2017 WL 398426 (Nev. Jan. 26, 2017) ("[T]he extinguishment of a subordinate

4    deed of trust through an HOA's nonjudicial foreclosure does not violate the Takings Clauses.").

5                       *2. Due Process*

6            Guild argues that NRS 116.3116 *et seq.* violates due process.  (ECF No. 40 at 49–55).  In

7    support, Guild provides a lengthy due process analysis.  (ECF No. 40 at 49-55).

8            In *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, the Ninth Circuit held that NRS

9    116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it

10   intended to foreclose only if the lender had affirmatively requested notice, facially violated

11   mortgage lenders' constitutional due process rights.  832 F.3d 1154, 1157–58 (9th Cir. 2016).  The

12   facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2).

13   *See id.* at 1158.  At issue is the "opt-in" provision that unconstitutionally shifts the notice burden

14   to holders of the property interest at risk.  *See id.*

15           To state a procedural due process claim, Guild must allege "(1) a deprivation of a

16   constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

17   protections."  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir.

18   1998).  Guild has satisfied the first element as a deed of trust is a property interest under Nevada

19   law.  *See* Nev. Rev. Stat. § 107.020 *et seq.*; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S.

20   791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that is

21   significantly affected by a tax sale").  However, Guild fails on the second prong.

22           Due process does not require actual notice.  *Jones v. Flowers*, 547 U.S. 220, 226 (2006).

23   Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested

24   parties of the pendency of the action and afford them an opportunity to present their objections."

25   *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*

26   *Court Trust*, 832 F.3d at 1158.

27           Here, adequate notice was given to the interested parties prior to extinguishing a property

28   right.  A&K recorded the notice of foreclosure sale on October 10, 2013, and also mailed the notice

James C. Mahan
U.S. District Judge

- 11 -

of foreclosure sale to Guild and other interested parties by certified mail.  Nor does Guild assert that it did not receive the notice of the foreclosure sale.

As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect inherent in NRS 116.31163(2) as it put Guild on notice that its interest was subject to pendency of action and offered all of the required information.  Thus, Guild's motion for summary judgment will be denied as to this issue.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Guild's motion for summary judgment (ECF No. 40) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Prestwick's motion for summary judgment (ECF No. 43) be, and the same hereby is, DENIED.

DATED February 22, 2017.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge