UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GUILD MORTGAGE COMPANY, | Case No. 2:15-CV-258 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| PRESTWICK COURT TRUST, et al., | |
| Defendant(s). | |

Presently before the court is defendant/counterclaimant Prestwick Court Trust's ("Prestwick") motion for summary judgment. (ECF No. 70). Plaintiff/counter defendant Guild Mortgage Company ("Guild") filed a response and counterclaim for summary judgment (ECF No. 75), to which Prestwick replied (ECF No. 84).

Also before the court is defendant Canyon Crest Master Association's (the "HOA") motion for summary judgment. (ECF No. 74). Guild filed a response. (ECF No. 77).

Also before the court is Guild's motion for summary judgment. (ECF No. 76). Prestwick filed a response (ECF No. 83), to which the HOA joined (ECF No. 86), and to which Guild replied (ECF No. 87).

**I.     Facts**

The present case involves a dispute over real property located at 247 Prestwick Court, Mesquite, Nevada 89027 (the "property"). (ECF No. 1).

On November 29, 2011, Mesquite 52 LLC deeded the property to Anibal C. Estrada ("Estrada"). (ECF No. 1). Estrada obtained a mortgage loan in the amount of $180,285.00 from Guild, using the property as collateral. (ECF No. 75). The loan was insured by Federal Housing

**James C. Mahan**
**U.S. District Judge**

Administration ("FHA"). *Id.* Estrada granted Guild a deed of trust, which Guild subsequently recorded. (ECF No. 1).

Estrada then became delinquent on his HOA assessments. (ECF No. 75). On or about December 21, 2012, the HOA filed a notice of delinquent assessment lien in the amount of $1,253.27 via its foreclosure agent, Alessi & Koenig, LLC ("Alessi & Koenig"). (ECF No. 1).

On May 6, 2013, Alessi & Koenig then filed a notice of default and election to sell under homeowners association lien, claiming a lien in the amount of $2,469.81. *Id.* Alessi & Koenig mailed copies of the notice of default and election to sell to Estrada, MERS, Guild, and other interested parties. (ECF No. 70).

On October 10, 2013, Alessi & Koenig recorded a notice of foreclosure sale, claiming a lien in the amount of $4,538.40. *Id.*; (ECF No. 1). Copies of the notice of foreclosure sale were mailed to Estrada, Guild, and other interested parties. *Id.* The notice of sale was also published in the Nevada Legal News. *Id.*

On November 6, 2013, Alessi & Koenig conducted the public foreclosure sale of the property. *Id.* Prestwick purchased the property for $20,100.00 at the foreclosure sale. *Id.* On November 18, 2013, Alessi & Koenig recorded a trustee's deed upon sale conveying the property to Prestwick. (ECF No. 74).

After the foreclosure sale extinguished the deed of trust, MERS executed an assignment of deed of trust assigning all beneficial interest and all rights accrued or to accrue under the deed of trust to Guild. (ECF No. 70).

On February 12, 2015, Guild filed the underlying complaint against the HOA and Prestwick, alleging six causes of action: (1) declaratory relief regarding the facial unconstitutionality of NRS 116; (2) declaratory relief that the foreclosure sale amounted to an unconstitutional taking under NRS 116; (3) the transfer to Prestwick was voidable under NRS 112.190; (4) declaratory relief that the HOA sale was commercially unreasonable and therefore void; (5) declaratory relief that the HOA sale was unconstitutional as it was preempted by federal law; (6) and quiet title. (ECF No. 1).

On February 22, 2017, the court denied both Prestwick (to which the HOA joined) (ECF No. 43) and Guild's (ECF No. 40) motions for summary judgment. (ECF No. 53). On March 8, 2017, Magistrate Judge Ferenbach granted the parties' stipulation to reopen and extend discovery.

In the instant motion, Prestwick again moves for summary judgment against Guild seeking quiet title and declaratory relief in its favor. (ECF No. 70). The HOA (ECF No. 74) and Guild (ECF No. 76) each also filed motions for summary judgment.

**II.    Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that

party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**[1]

In Prestwick's motion, it contends that summary judgment in its favor is proper because, *inter alia*, the foreclosure sale extinguished Guild's deed of trust pursuant to NRS 116.3116 and

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–12, when the events giving rise to this litigation occurred.

*SFR Investments*. (ECF No. 70). Prestwick further contends that the foreclosure sale should not be set aside because Guild has not shown fraud, unfairness, or oppression as outlined in *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"), Prestwick is a bona fide purchaser, Guild failed to protect its interest in advance of the foreclosure sale, and because due process concerns were not implicated. (ECF No. 70). The court agrees. As the claims set forth in the HOA's motion for summary judgment align with those asserted in Prestwick's, a finding in favor of Prestwick's motion means the same for the HOA's.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for claimant to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the NRS gives an HOA a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

**James C. Mahan**
**U.S. District Judge**

- 5 -

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105, 1110 (Nev. 2016) ("*Shadow Wood*").

Based on *Shadow Wood*, the recitals therein are conclusive evidence that the foreclosure lien statutes were complied with—*i.e.*, that the foreclosure sale was proper. *See id.*; *see also Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 (Nev. App. Apr. 17, 2017) ("And because the recitals were conclusive evidence, the district court did not err in finding that no genuine issues of material fact remained regarding whether the foreclosure sale was proper and granting summary judgment in favor of SFR."). Therefore,

---

[2] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.
>
> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

pursuant to *SFR Investments*, NRS 116.3116, and the recorded trustee's deed upon sale in favor of Prestwick, the foreclosure sale was proper and extinguished the first deed of trust.

Notwithstanding, the court retains the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See Shadow Wood Homeowners Assoc.*, 366 P.3d at 1112 ("When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief."). Accordingly, to withstand summary judgment in Prestwick's favor, Guild must raise colorable equitable challenges to the foreclosure sale or set forth evidence demonstrating fraud, unfairness, or oppression.

In its motion for summary judgment, Guild sets forth the following relevant arguments: (1) the foreclosure sale is invalid because NRS Chapter 116 is facially unconstitutional pursuant to *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017) ("*Bourne Valley*") and because the sale amounted to a taking under the 5th Amendment and a deprivation of property under the 14th amendment; (2) the foreclosure sale was commercially unreasonable; (3) Prestwick is not a bona fide purchaser; (4) FHA insurance results in conflict preemption; and (5) the sale to Prestwick amounted to a voidable transfer under NRS 112.190. (ECF No. 76). The court will address each in turn.

While the court will analyze Guild's equitable challenges regarding its quiet title, the court notes that the failure to utilize legal remedies makes granting equitable remedies unlikely. *See Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n*, 646 P.2d 549, 551 (Nev. 1982) (declining to allow equitable relief because an adequate remedy existed at law). Simply ignoring legal remedies does not open the door to equitable relief.

### *1. Constitutional Challenges*

Guild argues that *Bourne Valley* held the HOA foreclosure statute to be facially unconstitutional and unenforceable. (ECF No. 75). Guild further contends that *Bourne Valley* renders any factual issues concerning actual notice is irrelevant. (ECF No. 75). Guild thus

maintains that it need only "show that the foreclosure and extinguishment of Guild's rights occurred pursuant to NRS 116." *Id.*

Guild has failed to show that *Bourne Valley* is applicable to its case. Despite Guild's erroneous interpretation to the contrary, *Bourne Valley* did not hold that the entire foreclosure statute was facially unconstitutional. At issue in *Bourne Valley* was the constitutionality of the "opt-in" provision of NRS Chapter 116, not the statute in its entirety. Specifically, the Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. As identified in *Bourne Valley*, NRS 116.31163(2)'s "opt-in" provision unconstitutionally shifted the notice burden to holders of the property interest at risk—not NRS Chapter 116 in general. *See id.* at 1158.

Further, the holding in *Bourne Valley* provides little support for Guild, as Guild's contentions are not predicated on an unconstitutional shift of the notice burden, which required it to "opt in" to receive notice. Guild does not argue that it lacked notice, actual or otherwise, of the event that affected the deed of trust (*i.e.*, the foreclosure sale). In fact, it is undisputed that Guild, as well as other interested parties, received proper and timely notice of the foreclosure sale.

"[T]he Due Process Clause protects only against deprivation of existing interests in life, liberty, or property." *Serra v. Lappin*, 600 F.3d 1191, 1196 (9th Cir. 2010); *see also, e.g.*, *Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity."). To establish a procedural due process claim, a claimant must show "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Here, adequate notice was given to the interested parties prior to extinguishing a property right. Alessi & Koenig recorded the notice of foreclosure sale on October 10, 2013, and also mailed the notice of foreclosure sale to Guild and other interested parties by certified mail. Again, Guild does not assert that it did not receive the notice of the foreclosure sale.

As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect inherent in NRS 116.31163(2) as it put Guild on notice that its interest was subject to pendency of action and offered all of the required information. Thus, Guild's motion for summary judgment will be denied as to this issue.

Guild also argues the foreclosure sale amounted to a deprivation of property under the 14th Amendment's due process clause. The deprivation of property must be caused by a state actor. *See JP Morgan Chase Bank v. SFR Investments Pool 1*, Case No. 2:14-cv-02080-RFB (D. Nev. July 28, 2016) ("The Fourteenth Amendment protects citizens from unlawful action by the government, but does not regulate the conduct of private individuals or entities."). Due process protections do not extend to private actors engaged in private conduct. *Am. Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). There is no state action or actor here. Guild's arguments as to the foreclosure sale amounting to state action are unconvincing.

Lastly, Guild contends that NRS 116.3116 *et seq.* violates the 5th Amendment takings clause. (ECF No. 75). The takings clause prohibits the state from taking private property for public use without just compensation. U.S. Const. amend. V; Nev. Const. art. 1, § 8(6). Guild's contention, however, has been specifically rejected. *See, e.g.*, *Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortgage, a Div. of Wells Fargo Bank, N.A.*, 133 Nev. Adv. Op. 5, --- P.3d ----, 2017 WL 398426 (Nev. Jan. 26, 2017) ("[T]he extinguishment of a subordinate deed of trust through an HOA's nonjudicial foreclosure does not violate the Takings Clauses."). Accordingly, Guild's motion for summary judgment as to its 5th Amendment taking's claim will be denied.

### 2. *Failure to Offer Tender*

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their

security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

Here, Guild does not argue that it attempted to pay the deficiency amount prior to the foreclosure sale so as to preserve its interest. Pursuant to the notice of trustee's sale, $4,538.40 was due. (ECF No. 70). Had Guild paid the noticed amount, the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). Rather than paying the noticed amount and preserving its interest, Guild now seeks to profit from its own failure to follow the rules set forth in the statutes. *Cf.* Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale). Guild's failure to make a tender offer weighs against a finding of summary judgment in its favor.

### 3. *Commercial Reasonability*

Guild argues that the court should grant its motion because the grossly inadequate price paid by Prestwick (9.8% of the property's fair market value) at the foreclosure sale is sufficient to set aside a foreclosure sale under *Shadow Wood*. (ECF No. 75). Further, Guild argues it can establish evidence of fraud, unfairness, or oppression. *Id.* However, Guild overlooks the reality of the foreclosure process. The amount of the lien—not the fair market value of the property—is what typically sets the sales price.

Guild further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (ECF No. 75).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-

Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[3]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016).

In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id.* at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))). Thus, a grossly inadequate sale price is insufficient to justify setting aside a foreclosure sale absent a showing of fraud, oppression, or unfairness.

Despite Guild's assertion to the contrary, the *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court's adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing

---

[3] *See, e.g., Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, Guild fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. Guild argues that the purchase price ($20,100.00) at the foreclosure sale (November 6, 2013) was grossly inadequate because it was 9.8% of the property's fair market value. (ECF No. 75). In support, Guild provides that its appraisal valued the property at $205,000.00 at the time of the foreclosure sale. (ECF No. 75).

The appraisal report attached to Guild's motion, however, states that the defined value of the property was "as of March 31, 2017" (ECF No. 75), more than three years after the foreclosure sale, not at the time of the foreclosure sale. Further, the six comparable sales listed in the report received insurable clear title. Here, due to nature of the property's sale, no title company would be willing to issue title insurance. Thus, Guild has not set forth any competent evidence that the sale price was grossly inadequate.

James C. Mahan
U.S. District Judge

- 12 -

1    Guild also contends that the "misleading" language in section 7.2 of the HOA's CC&Rs

2 operated to "chill" bids at the foreclosure sale, resulting in a depressed price. (ECF No. 75). This

3 exact argument was addressed and rejected by the court in *SFR Investments Pool 1, LLC v. U.S.*

4 *Bank N.A.*, 130 Nev. Adv. Op. 75, 334 P.3d 408, 418-18 (2014). Language in the CC&Rs has no

5 impact on the superprioriety lien rights granted by NRS 116.

6    Guild further contends that because the Alessi & Koenig law firm had previously

7 represented Prestwick on a couple of unrelated quiet title actions in the past, its role conducting

8 the foreclosure sale amounts to unfairness. (ECF No. 75). Based on the evidence, this argument

9 fails. First, Alessi & Koenig the law firm and Alessi & Koenig the collection company are separate

10 entities. (ECF No. 84). Second, Alessi & Koenig's representation of Prestwick ended at least a

11 year in advance of the foreclosure sale on November 6, 2013. *Id.* Lastly, Guild offers no evidence

12 that the sale was improperly conducted as a result of the prior relationship between Prestwick and

13 the separate Alessi & Koenig entity. Instead, Guild merely speculates and concludes that this past

14 and independent relationship amounted to unfairness.

15    Accordingly, Guild's commercial reasonability argument fails. as it fails to set forth

16 evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC*, No. 70653, 2017

17 WL 1423938, at *3 n.2 ("Sale price alone, however, is never enough to demonstrate that the sale

18 was commercially unreasonable; rather, the party challenging the sale must also make a showing

19 of fraud, unfairness, or oppression that brought about the low sale price.").

20         ***4. Bona Fide Purchaser Status***

21    Guild contends that Prestwick cannot qualify as a bona fide purchaser because it "threw

22 [itself] into a depressed market" and had knowledge of the contested nature of "these sales." (ECF

23 No. 75 at 23). Guild also argues that the CC&Rs raise a presumption against bona fide purchaser

24 status here, as "the CC&Rs disclaim everything." (ECF No. 74 at 24).

25    Prestwick argues that it is a bona fide purchaser because it paid value for the property and

26 it lacked notice of a competing or superior interest in the property. (ECF No. 70). Because Guild

27 has not proven that the superpriority portion of the HOA lien was paid in advance of the foreclosure

28

sale, Prestwick was not put on inquiry notice. An investigation would have only confirmed that the interest acquired by the buyer at the foreclosure sale would have priority over the deed of trust.

Because the court concludes that Guild failed to properly raise any equitable challenges to the foreclosure sale, the court need not address Guild's argument that Prestwick was not a bona fide purchaser for value. *See, e.g.*, *Nationstar Mortg., LLC*, No. 70653, 2017 WL 1423938, at *3 n.3.

### *5. FHA-Insured Loan*

Guild argues that the foreclosure sale is void because the loan was insured by FHA. (ECF No. 75).

Under the property clause of the United States Constitution, only "Congress shall have the power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States . . . ." U.S. Const. Art. IV, § 3, cl. 2. The supremacy clause provides that the "Constitution . . . shall be the supreme law of the land . . . ." U.S. Const. Art. VI, cl. 2. "State legislation must yield under the Supremacy Clause of the Constitution to the interests of the federal government when the legislation as applied interferes with the federal purpose or operates to impede or condition the implementation of federal policies and programs." *Rust v. Johnson*, 597 F.2d 174, 179 (9th Cir. 1979).

In *Rust*, the Ninth Circuit held that a city's foreclosure on property insured by the Federal National Mortgage Association was invalid under the supremacy clause. The court reasoned that upholding the sale "would run the risk of substantially impairing the Government's participation in the home mortgage market and of defeating the purpose of the National Housing Act." *Id.*

On this basis, courts consistently apply federal law, ignoring conflicting state law, when determining rights related to federally owned and insured loans. *United States v. Stadium Apartments, Inc.*, 425 F.2d 358, 362 (9th Cir. 1970) (holding that federal law applies to mortgages insured by the Federal Housing Administration ("FHA") "to assure the protection of the federal program against loss, state law to the contrary notwithstanding"); *see also United States v. Victory Highway Vill., Inc.*, 662 F.2d 488, 497 (8th Cir. 1981) (citing Ninth Circuit case law) ("We note that federal law, not [state] law, governs the rights and liabilities of the parties in cases dealing

James C. Mahan
U.S. District Judge

- 14 -

with the remedies available upon default of a federally held or insured loan."). Foreclosure on federal property is prohibited where it interferes with the statutory mission of a federal agency. *See United States v. Lewis Cnty.*, 175 F.3d 671, 678 (9th Cir. 1999) (holding that the state could not foreclose on federal Farm Service Agency property for non-payment of taxes).

Indeed, federal district courts in this circuit have set aside HOA foreclosure sales on supremacy clause grounds in cases involving federally insured loans. *Saticoy Bay LLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, No. 2:13-cv-1199-JCM-VCF, 2015 WL 1990076, at *1 (D. Nev. Apr. 30, 2015); *see also Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 982 (C.D. Cal. 2000) (voiding HOA's non-judicial foreclosure on HUD property, quieting title in HUD's favor based on property and supremacy clauses); *Yunis v. United States*, 118 F. Supp. 2d 1024, 1027, 1036 (C.D. Cal. 2000) (voiding HOA's non-judicial foreclosure sale of property purchased under veteran's association home loan guarantee program); *Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No. 2:13-cv-01845-GMN-GWF, 2014 WL 4798565, at *6 (D. Nev. Sept. 25, 2014) (holding that property and supremacy clauses barred foreclosure sale where mortgage interest was federally insured).

The single-family mortgage insurance program allows FHA to insure private loans, expanding the availability of mortgages to low-income individuals wishing to purchase homes. *See Sky Meadow Ass'n*, 117 F. Supp. 2d at 980–81 (discussing program); *Wash. & Sandhill Homeowners Ass'n*, 2014 WL 4798565, at *1 n.2 (same). If a borrower under this program defaults, the lender may foreclose on the property, convey title to HUD, and submit an insurance claim. 24 C.F.R. 203.355. HUD's property disposition program generates funds to finance the program. *See* 24 C.F.R. § 291.1.

However, the instant case is distinguishable from these cases in that, here, FHA is not a named party. Neither the complaint nor the counterclaim seeks to quiet title against FHA. Thus, this argument provides no support for Guild as the outcome of the instant case has no bearing on FHA's ability to quiet title. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC*, 200 F. Supp. 3d 1141, 1162–64 (D. Nev. 2016); *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 106 F. Supp. 3d 1174, 1177 (D. Nev. 2015); *see also Bank of America, N.A. v. Hollow*

*de Oro Homeowners Association, et al.*, No. 2:16-CV-675-JCM-VCF, 2017 WL 936633, at *3 (D. Nev. Mar. 9, 2017).

### *6. Invalid transfer pursuant to NRS 112*

Lastly, Guild argues that the foreclosure sale amounts to a fraudulent transfer under NRS 112. (ECF No. 75).

> NRS 112.190(1) provides:
> "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonable equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as result of the transfer or obligation."

Nev. Rev. Stat. § 112.190(1). NRS 112.150(12) defines transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with an *asset* or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance."

> NRS 112.150(2) defines asset as:
> "2. "Asset" means property of a debtor, but the term does not include:
>     (a) *Property to the extent it is encumbered by a valid lien*;
>     (b) *Property to the extent it is generally exempt under nonbankruptcy law*; or
>     (c) An interest in property held in tenancy by the entireties or a community property to the extent it is not subject to process by a creditor holding a claim against only one tenant."

Nev. Rev. Stat. § 112.150(2).

Here, as Prestwick correctly argues, the property does not constitute an "asset" under NRS 112.150 because it was encumbered by valid liens at the time of the foreclosure sale. (ECF No. 84).

Further, as stated previously, Guild failed to provide any evidence that the previous representation of Prestwick by Alessi & Koenig in unrelated matters resulted in fraud or collusion in the instant foreclosure sale.

Accordingly, Guild's contention that the foreclosure sale amounted to a fraudulent transfer under NRS 112 fails.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

## IV. Conclusion

Guild has failed to set forth a sufficient equitable challenge to the foreclosure sale. Therefore, Guild's motion for summary judgment (ECF No. 76) against Prestwick and the HOA will be denied.

Further, Prestwick has sufficiently shown that it is entitled to summary judgment (ECF No. 70) on its quiet title and declaratory relief claims against Guild. Pursuant to *SFR Investments*, NRS Chapter 116, and the trustee's deed upon sale, the foreclosure sale extinguished the deed of trust. Guild has failed to raise any genuine issues to preclude summary judgment in Prestwick's favor. Therefore, the court will grant Prestwick's motion for summary judgment. (ECF No. 70).

In addition, in upholding the validity of the foreclosure sale, the court will grant the HOA's motion for summary judgment as well. (ECF N0. 74).

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Prestwick's motion for summary judgment (ECF No. 70) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 74) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Guild's motion for summary judgment (ECF No. 76) be, and the same hereby is, DENIED.

The clerk is instructed to enter judgment accordingly and close the case.

DATED February 14, 2018.

_____
UNITED STATES DISTRICT JUDGE